**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CENTER FOR INDIVIDUAL RIGHTS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No.: 07-1125 (JR) |
| | ) |
| **UNITED STATES DEPARTMENT** | ) |
| **OF JUSTICE ,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 and pertains

to the processing of plaintiff's FOIA request by the Defendant, United States Department of Justice

("DOJ").  The declaration of Nelson D. Hermilla, Chief of the Freedom of Information /Privacy Acts

("FOI/PA") Branch of the Civil Rights Division of the U.S. Department of Justice in Washington,

DC attached hereto, describes DOJ's responses to plaintiff's FOIA request.

**Factual and Procedural Background**

On July 6, 2007, the Civil Rights Division FOI/PA Branch received a FOIA request from

the Center for Individual Rights ("Plaintiff") seeking access to: (1)  "Drafts of any memorandum

of law filed in United States v. District of Columbia, et. al, District of the District of Columbia

Civ. No. 04-00619 (JR) that were shown to any representative or attorney for Father Flanagan's

Boys Home  ("Boys Home") and/or attorney for plaintiff in Father Flanagan's Boys Home v.

District of Colombia, et al., D.D.C. NO. 01-1732 (JR) (the "Boy's Home Litigation"); and (2)

Any documents constituting or reflecting communications to any representative or attorney for

Boys Home and/or attorneys for plaintiff in the Boys Home litigation concerning either of the litigations identified in the previous paragraph." Declaration of Nelson D. Hermilla ("Hermilla Decl.") ¶ 3. In searching for records responsive to Plaintiff's FOIA request, the FOI/PA staff contacted the Housing and Civil Enforcement Section. Hermilla Dec. ¶ 4. The Section advised the FOI/PA Branch that the Housing and Civil Enforcement Section had an open and ongoing law enforcement proceeding that involved the Boys Home. Id.

Civil case United States v. District of Columbia, et. al., ("the District of Columbia litigation") is an enforcement action brought by the Housing and Civil Enforcement Section of DOJ's Civil Rights Division under the Fair Housing Act and Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, et. seq. Hermilla Decl. ¶ 5. The case is currently in litigation in the District of Columbia. An earlier trial in December 2006 resulted in a hung jury. Id. The case has been bifurcated and some of the claims were scheduled for trial on September 17, 2007, while the U.S. and D.C. parties are currently briefing the non-jury claims. Id.

On July 31, 2006, the FOI/PA Branch responded to Plaintiff regarding its FOIA request. Hermilla Decl. ¶ 6. The FOI/PA Branch informed the Plaintiff that there were no drafts of memorandum of law responsive to Item 1 of the request. Id. The Civil Rights Division denied access to correspondence from the U.S. Department of Justice to Father Flanagan's Boys Home, since the documents pertained to an ongoing Civil Rights Division law enforcement action by the Civil Rights Division, and disclosure of such correspondence could reasonably be expected to interfere with ongoing law enforcement proceedings pursuant to 5 U.S.C. § 552(b)(7)(A). Id.

Plaintiff filed an administrative appeal with the Office of Information and Privacy (OIP)

which was received by that office on August 26, 2006.   Hermilla Decl. ¶ 7.  The FOI/PA Branch

contacted OIP on July 25, 2007, and learned that OIP has not yet adjudicated the Plaintiff's FOIA

appeal.  Id.

On August 31, 2007, the FOI/PA Branch sent a supplemental response to Plaintiff with

numerous copies of documents which could be released because disclosure of these documents

will not, at this time, interfere with ongoing law enforcement proceedings.  Hermilla Decl. ¶ 11.

## ARGUMENT

### I.        DOJ is Entitled to Summary Judgment

#### A.       Standard for Summary Judgment

FOIA cases are typically decided on motions for summary judgment.  See  Cappabianca v.

Commissioner, U.S. Customs Serv., 847 F.Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents

in issue are properly identified, FOIA cases should be handled on motions for summary judgment")

(citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)).[1]  "Summary judgment is available to

the defendant in a FOIA case, when the agency proves that it has fully discharged its obligations

under FOIA."  Miller v. U.S. Dept. of State, 779 F.2d 1378, 1382 (8th Cir. 1985.)  Agencies

establish that all of their obligations under the FOIA have been met through declarations and Vaughn

indexes.  Thus, when the pleadings, supplemented by affidavits or declarations, show no genuine

issue as to any material fact and the defendant is entitled to judgment as a matter of law, summary

judgment should be granted to the defendant.  Perry v. Block, 684 F.2d 121 (D.C. Cir. 1982).

Because the declaration of Mr. Hermilla demonstrates that DOJ has met its obligations under

---

[1]  For purposes of summary judgment, an agency's decision to withhold information from
a FOIA requester is subject to de novo review by the courts.  Hayden v. National Security
Agency Cent. Sec. Serv., 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), cert. denied, 446 U.S. 937
(1980)

the FOIA, and the pleadings, supplemented by the declaration, show no genuine issue as to any material fact, summary judgment should be granted to defendants as a matter of law.  See Perry v. Block, 684 F.2d 121.

### B.    DOJ's  Search Was Adequate

### 1.    Nature of Search Required

The agency's burden is to establish that it has conducted a search reasonably calculated to uncover all responsive records.  Truitt v. Dept. of State, 897 F.2d 540, 542 (D.C. Cir. 1990); Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health, et al., 844 F. Supp. 770, 776 (D.D.C. 1993).  The issue is not whether there might exist any other records possibly responsive to the request, but rather whether the search for responsive records was adequate.  Weisberg v. Dept. of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984); Nation Magazine v. U. S.  Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  "'[T]he search need only be reasonable; it does not have to be exhaustive.'"  Miller v. Dept. of State, 779 F.2d 1378, 1383 (8th Cir. 1985), citing National Cable Television Association v. FCC, 479 F.2d 183, 186 (D.C. Cir. 1973).  Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent.  Nation Magazine, 71 F.3d at 892 n.7.

To satisfy its search obligations, an agency should search those offices or records systems reasonably likely to have responsive records.  Oglesby v. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Knight v. Food and Drug Administration, 938 F. Supp. 710, 716 (D. Kan. 1996).  It should show that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  Oglesby, 920 F.2d at 68; see SafeCard Servs. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991).  "An agency may

prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith." Miller, 779 F.2d at 1383; Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978), cert. denied, 445 U.S. 927 (1980).

Once the agency establishes the adequacy of its search, the burden then shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency. Miller, 779 F.2d at 1383. It is insufficient for a requester to attempt to rebut agency affidavits with purely speculative claims. See Carney v. Dept. of Justice, 19 F.3d 807, 813 (2nd Cir. 1994); SafeCard, 926 at 1200; Maynard v. CIA, 986 F.2d 547, 559-560 (1st Cir. 1993).

As demonstrated below, the DOJ has conducted an adequate search.

### 2.  Details of DOJ's Search Procedures

In searching for records responsive to Plaintiff's FOIA request, the FOI/PA staff contacted the Housing and Civil Enforcement Section.  Hermilla Dec. ¶ 4.  The Section advised the FOI/PA Branch that the Housing and Civil Enforcement Section had an open and ongoing law enforcement proceeding that involved the Boys Home.  Id.

### C.  DOJ Properly Applied Exemption 7(A)

Exemption 7(A) authorizes agencies to withhold "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552 (b)(7)(A).  In defending an Exemption 7(A) withholding, the agency must show that (1) a law enforcement proceeding is pending, or reasonably regarded as prospective, see Manna v. United States Dep't of Justice, 51 F.3d 1158, 1164 (3rd Cir. 1995), or as preventative, see, e.g., Moorefield. v. United States Secret Serv., 611 F.2d 1021, 1026 (5th

Cir. 1980), and (2) that the release of the information could reasonably be expected to cause some articulable harm. See Manna, 51 F.3d at 1164.  An articulable harm occurs "whenever the government's case in court would be harmed by the premature release of evidence or information," Nat'l Labor Relations Board v. Robbins Tire & Rubber Co., 437 U.S. 214, 232 (1978), or when disclosure would impede any necessary investigation prior to the enforcement proceeding. Dickerson v. U.S. Dep't of Justice, 992 F.2d 1426, 1429 (6th Cir. 1993).

Once the first threshold requirement is satisfied, the agency must establish that the release would result in an articulable harm.  To satisfy this burden, the agency must provide at least a general description of the types of documents at issue sufficient to indicate the type of interference threatening the law enforcement proceeding.  Curran v. U.S. Dep't of Justice, 813 F.2d 473, 475 (1st Cir. 1987); Spannaus v. U.S. Dep't of Justice, 813 F.2d 1285, 1287 (4th Cir. 1987) (holding that a categorical description of the withheld material is sufficient because any further details "would lead to disclosure of the very information sought to be protected").

The Civil Rights Division records being withheld under Exemption 7(A) were compiled in conjunction with an ongoing investigation and law enforcement proceeding involving allegations of violations of the Fair Housing Act and Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988,, 42  U.S.C.  § 3601, et. seq. Hermilla Dec. ¶ 9.  The Civil Rights Division withheld approximately 350 pages of documents in the United States v. District of Columbia, et. al, case file.  Id.  The Court consolidated the District of Columbia litigation with the earlier filed action, Father Flanagan's Boys Home v. District of Colombia, et al., by Judge James Robertson's court order dated July 15, 2004.  Id.  The FOIA Plaintiff was involved in the earlier litigation.  Id.  The court consolidated these two cases for

purposes of discovery because the cases involve common issues of law and fact.  Id.  All of the

withheld documents are part of the ongoing law enforcement proceedings and contain

correspondence and internal emails concerning tactics, analysis of allegations and legal issues,

analysis of evidence and transactions investigated, prospective strategies, etc.  Id.  Accordingly,

the records being withheld meet the threshold requirement of Exemption 7 of "records or

information compiled for law enforcement purposes."  Id.

### 1. Categories of Documents

The Civil Rights Division records withheld under Exemption 7(A), fall into one or more

of three major categories, each containing several sub-categories based on the type of

information contained in the records. Hermilla Decl. ¶ 12.

### Documents Relating to Attorney Work Product and Case Development Matters

– investigative reports furnished to Division attorneys

– attorneys and memoranda contain prospective opinions and prospective strategies

– tactics, analysis of allegations and legal issues, analysis of evidence and transactions

being investigated, and background information upon which attorneys could evaluate initial

inquiries, allegations, investigation, and cases.

– documents concerning contacts between the Division and other agencies or among the

Department components concerning such things as initial allegations and inquiries, progress and

scope of investigations, legal analysis, and prospective opinions.

– documents concerning contacts between Division attorneys and witnesses and their

counsel in or related to the ongoing proceedings

– documents concerning contacts between Division attorneys and co-Plaintiffs attorneys

in their common interest and related to the ongoing proceedings

    – case evidence and summaries

### Documents Relating to Evidentiary Matters

– documents relating to the location or viability of potential evidence

– documents obtained in response to document request, search warrants, or subpoenas

– financial records, construction records, zoning records, permits, and plans pertinent to

the ongoing proceedings

– other documentary evidence obtained pertinent to and in conjunction with the ongoing

law enforcement proceedings

### Documents Relating to Witnesses

– notes and summaries of witness interviews

– witness statements/testimony

### Interference/Harm from Disclosure

The Civil Rights Division determined that disclosure of the information contained in

these categories of documents described above could reasonably be expected to result in

interference with or harm to the ongoing law enforcement proceedings. Hermilla Decl. ¶ 13.

Disclosure of attorney work product and other documents related either to the

government's initial inquiries or to the development of the government's case could prematurely

reveal the direction, focus, and scope of other inquiries to the Plaintiff; the evidence developed to

date and the reliance placed by the government on that evidence; the government's strategies;

and the strengths and weakness of the government's case.  Hermilla Decl. ¶ 14.  Prematurely

revealing such information could provide potential defendants or third parties with undue insight

into the development of the government's case, could enable the Plaintiff to devise strategies to counter enforcement efforts, and could impair the government's ability to present its best case. Id.

A premature disclosure of documents concerning the location or viability of potential evidence, as well as those documents that constitute the actual documentary and testimonial evidence obtained by the government, could provide potential defendants or third parties with insight into the government's case against them; could enable these individuals to alter, tailor or destroy evidence; or otherwise assist them in circumventing the law enforcement proceedings. Hermilla Decl. ¶ 15. Likewise, disclosing documents relating to witnesses in ongoing inquiries and law enforcement proceedings could result in witness tampering or intimidation; could lead to alteration, tailoring or construction of testimony; and could discourage the continued cooperation of these witnesses as well as other knowledgeable individuals. Hermilla Decl. ¶ 16. A defendant who was dismissed from the initial lawsuit could also lead to alteration, tailoring or construction of testimony and could discourage the continued cooperation of these witnesses as well as other knowledgeable individuals. Id.

The Civil Rights Division has made every effort to provide clear and full descriptions of the categories of records being withheld pursuant to Exemption 7(A) and to identify the harm to and interference with the ongoing proceedings that could reasonably be expected to occur from release of the information contained in such records. Hermilla Decl. ¶ 17. However, any attempt to further describe the records above in greater detail would lead to disclosure of the very information sought to be protected. Id. Although the Civil Rights Division, at the present time, is withholding these documents pursuant to Exemption 7(A), these documents, if individually

processed, would also be exempt in whole or in part under other provisions of the FOIA,

including 5 U.S.C. § 552 (b)(5) and  5 U.S.C. § 552 (b)(7)(C).  Hermilla Decl. ¶ 18.

### D.  DOJ Properly Applied Exemption 5

Title 5, United States Code, § 552 (b)(5) ("Exemption 5") protects "inter-agency or intra-

agency memorandums or letters which would not be available by law to a party in litigation with

the agency." 5 U.S.C. § 552(b)(5).  In other words, this exemption protects documents normally

privileged in the civil discovery context.  FTC v. Grolier Inc., 462 U.S. 19, 26 (1983); NLRB v.

Sears Roebuck & Co., 421 U.S. 132, 149 (1975).   This section of the FOIA incorporates the

attorney-client privilege, the attorney work-product doctrine and the executive "deliberative

process privilege that protects candid internal discussions of legal or policy matters." Maricopa

Audubon Soc'y  v. U.S. Forrest Serv., 108 F3. 1082, 1084 n. 1 (9th Cir. 19997).

DOJ has applied Exemption 5 to materials protected by the deliberative process, the

attorney work product privilege, and the common interest in litigation privilege.  Hermilla Decl.

¶ 23.

### 1.  Deliberative Process Privilege

"The deliberative process privilege, also known as the 'executive or governmental'

privilege serves many purposes." Eugene Burger Management Corp. v. U.S. Dept. of Housing

and Urban Development, 192 F.R.D. 1,4 (D.D.C. 1999) The main purpose of this privilege

"which is well established in the law , is ... to prevent injury to the quality of agency decisions.'"

Coefield, et al. City of LaGrange, Georgia, 913 F.Supp. 608, 615 (D.D.C. 19996)(quoting NLRB

v. Sears Roebuck & Co., 421 U.S. 132, 151 (1975)).  The deliberative process privilege prevents

harm to the quality of agency decisions by shielding the opinions, conclusions and reasoning

used in the administrative and decision making process of the Government. <u>See</u> <u>United States v.</u>

<u>Morgan</u>, (Morgan IV), 313 U.S. 40, 422 (1941); <u>Petroleum Info Corp. v. Dept. of the Interior</u>,

976 F2d. 1429, 1434 (D.C. Cir. 19920; <u>Access Reports v. Dept. of Justice</u>, 926 F2d. 1192, 1194-

1195; (D.C. Cir. 1991); <u>United States v.  Farley</u>, 11 F.3d at 1385, 1389 (7thCir. 1993).

The privilege is designed to encourage frank and uninhibited communication among

government officials in the course of creating public policy. <u>NLRB v. Sears Roebuck & Co.</u>, 421

U.S. 132, 149-151 (1975); <u>Petroleum Info. Corp.</u>, 976 F2d. At 1434; <u>Access Reports</u>, 926 F.2d at

1194-1195; Farley, 11 F3d. At 1389.  The deliberative process privilege remains even after a

final decision has been made, because "disclosure at any time could inhibit the free flow of

advice." <u>Federal Open Market Committee v. Merrill</u>, 443 U.S. 340, 360 (1979).

Since "Exemption 5 'was intended to protect not simply the deliberative material, but also

the deliberative process of agencies,'" <u>National Wildlife Federation v. U.S. Forest Service</u>, 861

F.2d 114, 1118 (9th Cir. 1974)) (quoting <u>Montrose Chemical Corp. of Ccalifornia v. Train</u> , 491

F2d. 63, 71 (D.C. Cir. 1974)) the courts have found that even factual materials are encompassed

within the privilege, if release of such materials would harm the overall deliberative process.

For a document to be covered by the deliberative process privilege, two requirements

must be satisfied.  <u>First</u>, it must be predecisional, <u>ie</u>., "antecedent to the adoption of agency

policy." <u>Jordan v. U.S. Dept. of Justice</u>, 591 F2d. 753, 744 (D.C. Cir. 1978)(en banc).  In

determining whether a document is predecisional , the Supreme Court has held that an agency

need not identify a specific decision in connection with which a document is prepared. <u>NLRB v.</u>

<u>Sears, Roebuck & Co.</u>, 421 U.S. at 151 n.18.  The Court recognized that agency deliberations do

not always ripen into agency decisions, and that ultimately the privilege is meant to protect the

decisional process, rather than any particular document or decision.  Id.; see also Dudman

Communications Corp. v. Dept. of the Air Force, 815 F2d 1565, 1568 (D.C. Cir. 1987)

("Congress enacted Exemption 5 to protect the executive's deliberative process – not to protect

specific materials.").  It is sufficient for the agency to establish "what deliberative process is

involved, and the role played by the documents in issue in the course of that process." Coastal

States Gas Corp. v. Dept. of Energy, 617 F2d. 854,868 (D.C.Cir. 1980).

Second, the document must be deliberative in nature, i.e., it must be "a direct part of the

deliberative process in that it makes recommendations or expresses opinions on legal or policy

matters." Vaughn v. Rosen, 523 F.2d 1135, 1143-44 (D.C. Cir. 1975) Deliberative documents

frequently consist of "advisory opinions, recommendations, and deliberations comprising parts of

a process by which governmental decisions and policies are formulated." NLRB v. Sears

Roebuck & Co., 421 U.S. at 150.  Thus, the exemption covers recommendations, draft

documents, proposals, analysis, suggestions, discussions, and other subjective documents that

reflect the give-and-take of the consultive process. Coastal States, 617 F2d. At 866.

The materials for which the deliberative privilege is being asserted consist of documents

reflecting many preliminary and developing recommendations and discussions over an extended

period of time regarding the application of strategies, guidelines, and appropriate office

procedures in handing related civil proceedings.  Hermilla Decl. ¶ 24.  These discussions

constituted a necessary part of the attorneys' investigation in order to develop alternative

strategies and properly present evidence in a civil setting.  Id.  Disclosure of these discussions

would defeat the purpose of the Freedom of Information Act by inhibiting the Civil Rights

Division's, other Department attorneys' and co-Plaintiffs' attorneys' future ability to have

candid, internal discussions which are necessary for the efficient and proper decision-making in the Department of Justice.  Id.

Many of the documents withheld under the deliberative process privilege are from lower-ranking personnel to either their peers or to supervisors.  Hermilla Dec. ¶ 25.  Each document for which this privilege is claimed is predecisional in nature and formed a part of the Division's ongoing deliberative discussions.  Id.  The materials for which the attorney work product privilege is being asserted were generated as a result of the investigations of violations of the statutes within the enforcement responsibility of the Division and in reasonable anticipation of possible civil prosecutions arising out of the investigations.  Id.  The documents for which the Exemption (b)(5) attorney work product claim has been utilized include the Civil Rights Division attorneys' private thoughts, tactics, strategy, factual and legal analyses and appraisals of the sufficiency of the available evidence or the capacity of the particular witnesses.  Id.  Such materials are clearly the type of work product privileged from discovery by an adversary in such litigation so as not to discourage its creations.  Id.  There are no documents for which this Exemption has been claimed that have been created outside the context of a reasonable anticipation of the likelihood of litigation.  Id.

## 2.  The Attorney Work-Product Privilege

The attorney work-product privilege protects "the files and the mental impressions of an attorney... reflected, of course, in interviews, statements, memoranda, correspondence, briefs ... and countless other tangible and intangible ways prepared in anticipation of litigation," particularly those documents which set forth the attorney's theory of the case and litigation strategy.  A. Michael's Piano, Inc. v. Federal Trade Comm'n, 18 F.3d 138, 146 (2d Cir. 1994)

(citing Hickman v. Taylor, 329 U.S. at 509-11).

In order to qualify for the protection of the attorney work-product privilege, a document must have been created by or at the direction of an attorney in anticipation of litigation. The litigation which is anticipated need not be imminent, as long as the motivating factor behind the creation of the document was to aid in possible future litigation. U.S. v. Davis, 636 F. 2d 1028, 1040 (5th Cir. 1981); A. Michael's Piano, 18 F3d. At 146; Hickman, 329 U.S. at 511.

The protection of Exemption 5 as to the attorney work-product privilege, as well as the other privileges, are not limited to civil litigation. Rather courts have either explicitly or implicitly recognized that the work-product doctrine is applicable to criminal prosecutions when the courts have upheld the nondisclosure of documents prepared in the context of a criminal investigation/prosecution pursuant to the (b)(5) Exemption. See Antonelli v. Sullivan, 732 F2d 560, 561 (7th Cir. 1983); Ferri v. U.S. Dept. of Justice, 573 F. Supp. 852, n. 33 (W.D.Pa. 1983); Harvey v. U.S. Dept. of Justice, 747 F. Supp. 29,37 (D.D.C. 1990); Dunham v. U.S. Dept. of Justice, 829 F.Supp. 428, 433 (D.D.C. 1993); Jimenez v. FBI, 938 F.Supp. 21, 28, (D.D.C. 1996). The courts have held that "if material is exempt from FOIA disclosure because of the attorney work-product privilege, the exemption does not terminate at the close of the litigation for which the material was prepared." Grove v. Dept. of Justice, et,al., 802 F. Supp. 506,514 (D.D.C. 1992).

The materials for which the attorney work product privilege is being asserted were generated as a result of the investigations of violations of the statutes within the enforcement responsibility of the Division and in reasonable anticipation of possible civil prosecutions arising out of the investigations. Hermilla Decl. ¶ 26. The documents for which the Exemption (b)(5)

-14-

attorney work product claim has been utilized include the Civil Rights Division attorneys' private thoughts, tactics, strategy, factual and legal analyses and appraisals of the sufficiency of the available evidence or the capacity of the particular witnesses.  Id.  Such materials are clearly the type of work product privileged from discovery by an adversary in such litigation so as not to discourage its creations.  Id.  There are no documents for which this Exemption has been claimed that have been created outside the context of a reasonable anticipation of the likelihood of litigation.  Id.

### E.  DOJ Properly Applied Exemption 7(C)

The FOIA, 5 U.S.C. § 552, does not apply to matters that are:

> (7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy. . . .

This exemption protects the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations.  Reporters Comm. for Freedom of the Press v. U.S. Dept of Justice, 816 F.2d 730, 780 (D.C. Cir. 1987), modified on other grounds, 831 F.2d 1124 (D.C. Cir. 1987), rev'd on other grounds, 489 U.S. 749 (1989); Computer Prof'ls for Social Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996).  Indeed, an agency in a FOIA case may categorically assert Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law enforcement files in such a way as to associate them with criminal activity.  Reporters Comm. for Freedom of the Press, 489 U.S. at 780; Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995); SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1206 (D.C. Cir. 1991).

The names of law enforcement officers who work on criminal investigations have also traditionally been protected against release by Exemption 7(C).  Davis v. U.S. Dept. of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992); Lesar v. U.S. Dept of Justice, 636 F.2d 472, 487-488 (D.C. Cir. 1980).  Similarly, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity.  Computer Prof'ls for Social Responsibility, 72 F.3d at 904; Farese v. U.S. Dept. of Justice, 683 F. Supp. 273, 275 (D.D.C. 1987).  The fact that the requester might be able to figure out the individuals' identities through other means or that their identities have been disclosed elsewhere does not diminish their privacy interests.  Fitzgibbon v. CIA, 911 F.2d 755 (D.C. Cir. 1990); Weisberg v. Dept. of Justice, 745 F.2d 1476, 1491 (D.C. Cir. 1984).

Once a privacy interest has been established, as here, it must be balanced against the public interest, if there is any, that would be served by disclosure.  Albuquerque Publ'g Co. v. Dept. of Justice, 726 F. Supp. 851, 855 (D.D.C. 1989).  The public interest in disclosure is limited to the FOIA's "core purpose" of shed[ing] light on an agency's performance of its statutory duties."  Reporters Comm. for Freedom of the Press, 489 U.S. at 773.  This standard is not easily satisfied when law enforcement information pertaining to individuals is sought, for there "is no reasonably conceivable way in which the release of one individual's name . . . would allow citizens to know 'what their government is up to.'"  Fitzgibbon v. CIA, 911 F.2d 755, 768 (D.C. Cir. 1990).  See also Albuquerque Publ'g Co., 726 F. Supp. at 855-56 (no public interest in disclosure of sensitive information DEA obtained about individuals and their activities, where such material would not shed light on DEA's conduct with respect to the investigation).  Furthermore, the requester must not only demonstrate the existence of the public interest but also

that the public interest is both significant and compelling, in order to overcome legitimate

privacy interests. Senate of Puerto Rico v. Dept. of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987);

Stone v. FBI, 727 F. Supp. 662, 667-69 (D.D.C. 1990).  The Supreme Court in Favish has clearly

defined the standards to be applied when the courts conduct the balancing test under Exemption

7(C).

> ...where there is a privacy interest protected by Exemption 7(C) and the public
> interest being asserted is to show that responsible officials acted negligently or
> otherwise improperly in the performance of their duties, requester must establish
> more than a bare suspicion in order to obtain disclosure.  Rather, the requester
> must produce evidence that would warrant a belief by a reasonable person that the
> alleged Government impropriety might have occurred.

National Archives and Records Administration v. Favis, 124 S.Ct. 1570, 1579, 1581 (2004).

Records of the Department of Justice, Civil Rights Division investigations, in this case,

related to the Housing Sections' enforcement of its law, satisfy the threshold requirement for

Exemption 7 as investigatory records compiled for law enforcement purposes. Hermilla Decl. ¶

27.  Of particular concern is personal information concerning individuals involved as subjects of

the investigations as well as complainants.  Hemilla Decl. ¶ 28.  The disclosure of personal data

to third parties could reasonably be expected to constitute an unwarranted invasion of personal

privacy.  Id.  The disclosure of this personal information could result in unwarranted public

attention, embarrassment, and might subject these individuals to harassment or reprisals.  Id.

Since the Civil Rights Division has no means of controlling the use made of information released

pursuant to the FOIA request, the disclosure of this information could constitute an irreparable

invasion of these individuals' privacy rights as well as a risk of harassment.  Id.

###### F. Segregability

The Court of Appeals for the District of Columbia Circuit has held that a District Court

considering a FOIA action has "an affirmative duty to consider the segregability issue *sua*

*sponte*." *Trans-Pacific Policing Agreement v. United States Customs Service*, 177 F.3d 1022,

1028 (D.C. Cir. 1999). The FOIA requires that, if a record contains information that is exempt

from disclosure, any "reasonably segregable" information must be disclosed after deletion of the

exempt information unless the non-exempt portions are "inextricably intertwined with exempt

portions." 5 U.S.C. § 552(b); *Mead Data Cent., Inc. v. United States Dept. of the Air Force*, 566

F.2d 242, 260 (D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the

agency must provide a "detailed justification" rather than "conclusory statements." *Mead Data*,

566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification"

that the exempt material would effectively be disclosed. *Id*. All that is required is that the

government show "with 'reasonable specificity'" why a document cannot be further segregated.

*Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover,

the agency is not required to "commit significant time and resources to the separation of

disjointed words, phrases, or even sentences which taken separately or together have minimal or

no information content." *Mead Data*, 566 F.2d at 261, n.55.

The Civil Rights Division withheld approximately 350 pages of documents. All of these

withheld documents are part of the same ongoing law enforcement proceeding. Hermilla Decl. ¶

10. There are multiple copies of many of the letters and emails and therefore this total may

include duplicates. Id. However, on August 31, 2007, the FOI/PA Branch sent a supplemental

response to Plaintiff with numerous copies of documents which could be released because disclosure of these documents will not, at this time, interfere with ongoing law enforcement proceedings. Hermilla Decl. ¶ 11.

In this matter, all responsive information has been provided to Plaintiff and reasonably segregable information was disclosed after withholding only exempt information.

In sum, the DOJ has properly responded to plaintiff's FOIA request and has provided plaintiff with all of the reasonably segregable nonexempt information to which it is entitled.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that plaintiff's motion for summary judgment be denied.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR #246470
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #416364
Assistant United States Attorney


_____/s/_____
CHARLOTTE A. ABEL, D.C. BAR #388582
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 Fourth Street, NW
Washington, D.C. 20530
(202) 307-2332

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CENTER FOR INDIVIDUAL RIGHTS,    )
    )
    Plaintiff,    )
    )
    v.    )    No. 1:07-CV-01125
    )
U.S. DEPARTMENT OF JUSTICE,    )
    )
    Defendant.    )
    )

## DECLARATION OF NELSON D. HERMILLA

I, Nelson D. Hermilla, declare the following to be true and correct:

1.    I am the Chief of the Freedom of Information/Privacy Acts ("FOI/PA") Branch of the Civil Rights Division of the U.S. Department of Justice ("DOJ") in Washington, D.C. My duties include supervision of the FOI/PA Branch of the Civil Rights Division. The FOI/PA Branch is responsible for processing all records access requests made to the Division pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, and the Privacy Act ("PA"), 5 U.S.C. §552a.

2.    The statements made in this declaration are based on knowledge acquired through the performance of my official duties.

3.    On July 6, 2007, the Civil Rights Division FOI/PA Branch received a FOIA request from the Center for Individual Rights ("Plaintiff") seeking access to: (1) "Drafts of any memorandum of law filed in <u>United States v. District of Columbia, et. al</u>, District of the District of Columbia Civ. No. 04-00619 (JR) that were shown to any representative or attorney for Father Flanagan's Boys Home ("Boys Home") and/or attorney for plaintiff in <u>Father Flanagan's Boys Home v. District of Colombia, et al.</u>, D.D.C. NO. 01-1732 (JR) (the "Boy's Home

Litigation"); and (2) Any documents constituting or reflecting communications to any representative or attorney for Boys Home and/or attorneys for plaintiff in the Boys Home litigation concerning either of the litigations identified in the previous paragraph."

4.    In searching for records responsive to Plaintiff's FOIA request, the FOI/PA staff contacted the Housing and Civil Enforcement Section. The Section advised the FOI/PA Branch that the Housing and Civil Enforcement Section had an open and ongoing law enforcement proceeding that involved the Boys Home.

5.    United States v. District of Columbia, et. al., ("the District of Columbia litigation") is an enforcement action brought by the Housing and Civil Enforcement Section of DOJ's Civil Rights Division under the Fair Housing Act and Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988,, 42 U.S.C. § 3601, et. seq. The case is currently in litigation in the District of Columbia. An earlier trial in December 2006 resulted in a hung jury. The case has been bifurcated and some of the claims are scheduled for trial on September 17, 2007, while the U.S. and D.C. parties are currently briefing the non-jury claims. The Department of Justice will file a Reply Brief to the District's Opposition to DOJ's Motion for Declaratory Judgment, Injunctive Relief and Civil Penalties on or before September 11, 2007.

6.    On July 31, 2006, the FOI/PA Branch responded to Plaintiff regarding its FOIA request. The FOI/PA Branch informed the Plaintiff that there were no drafts of memorandum of law responsive to Item 1 of the request. The Civil Rights Division denied access to correspondence from the U.S. Department of Justice to Father Flanagan's's Boy's Home, since the documents pertained to an ongoing Civil Rights Division law enforcement action by the Civil

Rights Division, and disclosure of such correspondence could reasonably be expected to interfere with ongoing law enforcement proceedings pursuant to 5 U.S.C. § 552(b)(7)(A).

7. The Plaintiff filed an administrative appeal with the Office of Information and Privacy (OIP) which was received by that office on August 26, 2006. The FOI/PA Branch contacted OIP on July 25, 2007, and learned that OIP has not yet adjudicated the Plaintiff's FOIA appeal.

8. FOIA Exemption 7(A) permits the withholding of records or information, compiled for law enforcement purposes, where the production of such records or information could reasonably be expected to interfere with enforcement proceedings.

9. The Civil Rights Division records being withheld under Exemption 7(A) were compiled in conjunction with an ongoing investigation and law enforcement proceeding involving allegations of violations of the Fair Housing Act and Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988,, 42 U.S.C. § 3601, et. seq. The Civil Rights Division withheld approximately 350 pages of documents in the United States v. District of Columbia, et. al, case file. The Court consolidated the District of Columbia litigation with the earlier filed action, Father Flanagan's Boys Home v. District of Colombia, et al., by Judge James Robertson's court order dated July 15, 2004. The FOIA Plaintiff was involved in the earlier litigation. The court consolidated these two cases for purposes of discovery because the cases involve common issues of law and fact. All of the withheld documents are part of the ongoing law enforcement proceedings and contain correspondence and internal emails concerning tactics, analysis of allegations and legal issues, analysis of evidence and transactions investigated, prospective strategies, etc. Accordingly, the records being withheld meet the threshold requirement of Exemption 7 of "records or information compiled for

law enforcement purposes."

10.    The Civil Rights Division withheld approximately 350 pages of documents.   All of these withheld documents are part of the same ongoing law enforcement proceeding.  There are multiple copies of many of the letters and emails and therefore this total may include duplicates.

11.  On September 7, 2007, the FOI/PA Branch sent a supplemental response to Plaintiff with numerous copies of documents which could be released because disclosure of these documents will not, at this time, interfere with ongoing law enforcement proceedings.

Categories of Documents

12.    The Civil Rights Division records withheld under Exemption 7(A), fall into one or more three major categories, each containing several sub-categories based on the type of information contained in the records.

Documents Relating to Attorney Work Product and Case Development Matters

– investigative reports furnished to Division attorneys

– attorney memoranda containing prospective opinions and prospective strategies

– tactics, analysis of allegations and legal issues, analysis of evidence and transactions being investigated, and background information upon which attorneys could evaluate initial inquiries, allegations, investigation, and cases.

– documents concerning contacts between the Division and other agencies or among the Department components concerning such things as initial allegations and inquiries, progress and scope of investigations, legal analysis, and prospective opinions.

– documents concerning contacts between Division attorneys and witnesses and their counsel in or related to the ongoing proceedings

-4-

— documents concerning contacts between Division attorneys and co-Plaintiffs attorneys in their common interest and related to the ongoing proceedings

— case evidence and summaries

<u>Documents Relating to Evidentiary Matters</u>

— documents relating to the location or viability of potential evidence

— documents obtained in response to document request, search warrants, or subpoenas

— financial records, construction records, zoning records, permits, and plans pertinent to the ongoing proceedings

— other documentary evidence obtained pertinent to and in conjunction with the ongoing law enforcement proceedings

<u>Documents Relating to Witnesses</u>

— notes and summaries of witness interviews

— witness statements/testimony

<u>Interference/Harm from Disclosure</u>

13.    The Civil Rights Division determined that disclosure of the information contained in the categories of documents described in paragraph 12 could reasonably be expected to result in interference with or harm to the ongoing law enforcement proceedings.

14.    Disclosure of attorney work product and other documents related either to the government's initial inquiries or to the development of the government's case could prematurely reveal the direction, focus, and scope of other inquiries to the Plaintiff; the evidence developed to date and the reliance placed by the government on that evidence; the government's strategies; and the strengths and weakness of the government's case.  Prematurely revealing such

-5-

information could provide potential defendants or third parties with undue insight into the development of the government's case, could enable the Plaintiff to devise strategies to counter enforcement efforts, and could impair the government's ability to present its best case.

15.    A premature disclosure of documents concerning the location or viability of potential evidence, as well as those documents that constitute the actual documentary and testimonial evidence obtained by the government, could provide potential defendants or third parties with insight into the government's case against them; could enable these individuals to alter, tailor or destroy evidence; or otherwise assist them in circumventing the law enforcement proceedings.

16.    Likewise, disclosing documents relating to witnesses in ongoing inquiries and law enforcement proceedings could result in witness tampering or intimidation; could lead to alteration, tailoring or construction of testimony; and could discourage the continued cooperation of these witnesses as well as other knowledgeable individuals.  A defendant who was dismissed from the initial lawsuit could also lead to alteration, tailoring or construction of testimony and could discourage the continued cooperation of these witnesses as well as other knowledgeable individuals.

17.    The Civil Rights Division has made every effort to provide clear and full descriptions of the categories of records being withheld pursuant to Exemption 7(A) and to identify the harm to and interference with the ongoing proceedings that could reasonably be expected to occur from release of the information contained in such records.  However, any attempt to further describe the records above in greater detail would lead to disclosure of the very information sought to be protected.

18.    Although the Civil Rights Division, at the present time, is withholding these documents pursuant to Exemption 7(A), these documents, if individually processed, would also be exempt in whole or in part under other provisions of the FOIA, including 5 U.S.C. § 552 (b)(5) and 5 U.S.C. § 552 (b)(7)(C).

19.    There are records that pertain to matters within the Civil Rights Division that would not interfere with current, ongoing law enforcement proceedings but that nonetheless pertain to sensitive internal deliberations, express candid opinions and contain attorney work product. I will describe these records that are exempt pursuant to 5 U.S.C. 552 (b)(5) and (b)(7)(C).

<u>EXEMPTION (b)(7)(A)</u>

20.    Exemption (b)(7)(A) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such could reasonably be expected to interfere with enforcement proceedings."

21.    In the instant case, the law enforcement proceeding is pending. The underlying case is still open and ongoing and is in active litigation in the Federal District Court, District of Columbia. The court bifurcated the case and the jury claims went to trial and resulted in a hung jury in December 2006. A retrial is scheduled to begin on September 17, 2007. The non-jury claims are currently being briefed and the Department of Justice will file a Reply Brief to the District's Opposition to DOJ's Motion for Declaratory Judgment, Injunctive Relief and Civil Penalties on September 11, 2007.

22.    Release of information about this open and ongoing law enforcement proceeding can reasonably be expected to cause an articulable harm.

EXEMPTION (b)(5)

23.    Exemption 5 exempts from mandatory release "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." This exemption has been applied here to materials protected by the deliberative process privilege, the attorney work product privilege, and the common interest in litigation privilege.

24.    The materials for which the deliberative privilege is being asserted consist of documents reflecting many preliminary and developing recommendations and discussions over an extended period of time regarding the application of strategies, guidelines, and appropriate office procedures in handing related civil proceedings.   These discussions constituted a necessary part of the attorneys' investigation in order to develop alternative strategies and properly present evidence in a civil setting.  Disclosure of these discussions would defeat the purpose of the Freedom of Information Act by inhibiting the Civil Rights Division's, other Department attorneys', and co-Plaintiffs' attorneys' future ability to have candid, internal discussions which are necessary for the efficient and proper decision-making in the Department of Justice.

25.    Many of the documents withheld under the deliberative process privilege are from lower-ranking personnel to either their peers or to supervisors. Each document for which this privilege is claimed is predecisional in nature and formed a part of the Division's ongoing deliberative discussions.

26.    The materials for which the attorney work product privilege is being asserted were generated as a result of the investigations of violations of the statutes within the enforcement

responsibility of the Division and in reasonable anticipation of possible civil prosecutions arising out of the investigations. The documents for which the Exemption (b)(5) attorney work product claim has been utilized include the Civil Rights Division attorneys' private thoughts, tactics, strategy, factual and legal analyses and appraisals of the sufficiency of the available evidence or the capacity of the particular witnesses. Such materials are clearly the type of work product privileged from discovery by an adversary in such litigation so as not to discourage its creation. There are no documents for which this Exemption has been claimed that have been created outside the context of a reasonable anticipation of the likelihood of litigation.

<u>EXEMPTION(b)(7)(C)</u>

27.     This provision exempts from mandatary release information contained in investigatory records compiled for law enforcement purposes, the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. Records of Department of Justice, Civil Rights Division investigations, in this case, related to the Housing Sections' enforcement of its law, satisfy the threshold requirement fo Exemption 7 as investigatory records compiled for law enforcement purposes.

28.     Of particular concern is personal information concerning individuals involved as subjects of the investigations as well as complainants. The disclosure of personal data to third parties could reasonably be expected to constitute an unwarranted invasion of personal privacy. The disclosure of this personal information could result in unwarranted public attention, embarrassment, and might subject these individuals to harassment or reprisals. Since the Civil Rights Division has no means of controlling the use made of information released pursuant to the FOIA request, the disclosure of this information could constitute an irreparable invasion of these individuals' privacy rights as well as a risk of harassment.

I declare under penalty of perjury that the foregoing is true and correct.

Nelson D. Hermilla, Chief
FOI/PA Branch
Civil Rights Division
U.S. Department of Justice
Washington, D.C.  20530

Executed on September 7, 2007

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR INDIVIDUAL RIGHTS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-1125 (JR) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| JUSTICE, | ) |
| | ) |
| Defendant. | ) |
| ——————————————————— | ) |

**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Defendant, Department of Justice ("DOJ") submits this statement of material facts as to which there is no genuine dispute in accordance with Local Rule 7(h).  The declaration of Nelson D. Hermilla, Chief of the Freedom of Information /Privacy Acts ("FOI/PA") Branch of the Civil Rights Division of the U.S. Department of Justice in Washington, DC attached hereto, support this statement.

1.     On July 6, 2007, the Civil Rights Division FOI/PA Branch received a FOIA request from the Center for Individual Rights ("Plaintiff") seeking access to: (1) "Drafts of any memorandum of law filed in United States v. District of Columbia, et. al, District of the District of Columbia Civ. No.  04-00619 (JR) that were shown to any representative or attorney for Father Flanagan's Boys Home  ("Boys Home") and/or attorney for plaintiff in Father Flanagan's Boys Home v. District of Colombia, et al., D.D.C. NO. 01-1732 (JR) (the "Boy's Home Litigation"); and (2) Any documents constituting or reflecting communications to any representative or attorney for Boys Home and/or attorneys for plaintiff in the Boys Home litigation concerning either of the litigations identified in

1

the previous paragraph."  Declaration of Nelson D. Hermilla ("Hermilla Decl.") ¶ 3.

2.     In searching for records responsive to Plaintiff's FOIA request, the FOI/PA staff contacted the Housing and Civil Enforcement Section.  Hermilla Dec. ¶ 4.  The Section advised the FOI/PA Branch that the Housing and Civil Enforcement Section had an open and ongoing law enforcement proceeding that involved the Boys Home.  Id.

3.     On July 31, 2006, the FOI/PA Branch responded to Plaintiff regarding its FOIA request.  Hermilla Decl. ¶ 6.  The FOI/PA Branch informed the Plaintiff that there were no drafts of memorandum of law responsive to Item 1 of the request.  Id.  The Civil Rights Division denied access to correspondence from the U.S. Department of Justice to Father Flanagan's Boys Home, since the documents pertained to an ongoing Civil Rights Division law enforcement action by the Civil Rights Division, and disclosure of such correspondence could reasonably be expected to interfere with ongoing law enforcement proceedings pursuant to 5 U.S.C. § 552(b)(7)(A).  Id.

4.     On August 31, 2007, the FOI/PA Branch sent a supplemental response to Plaintiff with numerous copies of documents which could be released because disclosure of these documents will not, at this time, interfere with ongoing law enforcement proceedings.  Hermilla Decl. ¶ 11.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR D.C. BAR #498610
United States Attorney


_____/s/_____
RUDOLPH CONTREAS, D.C. BAR #434122
Assistant United States Attorney


_____/s/_____
CHARLOTTE A. ABEL, D.C. BAR #388582
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 Fourth Street N.W.,
Washington, D.C.  20530
(202) 307-2332

JAMES PAXTON
Paralegal Specialist

3

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CENTER FOR INDIVIDUAL RIGHTS    )
    )
                 Plaintiff,    )
    )
          v.    )    Case No. 1:07CV01125 (JR)
    )
DEPARTMENT OF JUSTICE,    )
    )
             Defendant.    )
_____)

### DEFENDANT'S CONCISE STATEMENT OF GENUINE ISSUES

Defendant Department of Justice, hereby responds to Plaintiff's Rule 7(h) statement of Material Facts Not In Dispute ("Plaintiff's Statement") in accordance with Rules 56 of the Federal Rules of Civil Procedure and Local Rules 7(h) and 56.1.

Plaintiff's Statement, specifically the allegations in paragraphs 1 and 7, contains conclusions of law, and references to various documents in the record and legal authorities, not allegations of fact. Moreover, Defendant avers that, to the extent that the parties disagree as to the facts underlying the present action, those disagreements are not material. Nevertheless, responding specifically to the numbered paragraphs of Plaintiff's Statement and using the same paragraph numbering, Defendant responds to the following specific assertions in Plaintiff's Statement:

1. Admit.

2. Admit.

3. Admit.

4. Admit.

5. Admit that the Department of Justice has not responded to Plaintiff's appeal but deny

that the Department of Justice has not produced the requested records.  *See* defendant's

supplemental FOIA response dated September 7, 2007.  The Department of Justice produced 147

pages of documents in their entirety to Plaintiff.  *See also* Hermilla Declaration, page 4,

paragraph 11.

     6.  Admit.

     7.  Admit.

     Further responding to Plaintiff's Statement, Defendant avers that Plaintiff is not entitled

to summary judgment for the reasons stated in Defendant's accompanying Memorandum of

Points & Authorities in Opposition to Plaintiff's Motion for Summary Judgment, and Hermilla

Declaration..

                 Respectfully submitted,

                 JEFFREY A. TAYLOR
                 United States Attorney
                 D.C. Bar No. 498610

                 _____/s/_____
                 CHARLOTTE A. ABEL
                 Assistant United States Attorney
                 D.C. Bar No. 388582
                 Civil Division
                 555 4th Street, N.W.
                 Washington, D.C. 20530
                 (202) 307-2332
                 Facsimile: (202) 514-8780

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CENTER FOR INDIVIDUAL RIGHTS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Civil Action No.: 07-1125 (JR)** |
| | ) |
| **UNITED STATES DEPARTMENT** | ) |
| **OF JUSTICE,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

**ORDER**

This matter having come before the Court on the Plaintiff's Motion for Summary

Judgment and the Court having considered the entire record, it is hereby

**ORDERED** that plaintiff's motion for summary is denied, and it is further

**ORDERED** that judgment is entered in favor of the United States Department of Justice.

_____
DATE

_____
JAMES ROBERTSON
UNITED STATES DISTRICT JUDGE