UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CENTER FOR INDIVIDUAL RIGHTS, :
:
    Plaintiff, :
:
  v. : Civil Action No. 07-1125 (JR)
:
U.S. DEPARTMENT OF JUSTICE, :
:
    Defendant. :

## MEMORANDUM

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552 et seq., plaintiff Center for Individual Rights seeks to compel the production of documents currently being withheld by the United States Department of Justice ("DOJ"). The matter is currently before the Court on cross-motions for summary judgment.

## Background

On July 6, 2006, the Freedom of Information/Privacy Acts ("FOI/PA") Branch of the DOJ's Civil Rights Division received a FOIA request from the plaintiff seeking

> (1) Drafts of any memorandum of law filed in United States v. District of Columbia, et. al, District of the District of Columbia Civ. No. 04-00619 (JR) that were shown to any representative or attorney for Father Flanagan's Boys Home ("Boys Home") and/or attorney for plaintiff in Father Flanagan's Boys Home v. District of Colombia, et al., D.D.C. NO. 01-1732 (JR) (the "Boy's Home Litigation"); and (2) Any documents constituting or reflecting communications to any representative or attorney for Boys Home and/or attorneys for plaintiff in the Boys Home litigation concerning either of the litigations identified in the previous paragraph.

[Dkt. # 13, Ex. 2].  The cases referenced in this request are Fair Housing Act suits alleging discrimination on the basis of disability that are or were pending before me.  Both cases assert that the District violated the Fair Housing Act by effectively blocking Father Flanagan's Boys Home from operating group homes for abused, neglected, and abandoned children.  All of the claims raised by Father Flanagan in No. 01-1732, together with a subset of the claims asserted by the United States in No. 04-0619, were tried before a jury from November 27 to December 8, 2006.  The jury failed to reach a verdict and I declared a mistrial.  The dispute between Father Flanagan's Boys Home and the District has since settled.  The Fair Housing Act claims brought by the United States in No. 04-0619 remain pending.

On July 31, 2006, the FOI/PA Branch of the DOJ informed plaintiff that there were no draft memoranda responsive to its first request.  Invoking FOIA Exemption 7(A), 5 U.S.C. § 552(b)(7)(A), the DOJ denied access to the second set of documents requested, asserting that release of correspondence between the DOJ and Father Flanagan's Boys Home could reasonably be expected to interfere with ongoing law enforcement proceedings.  Plaintiff filed an administrative appeal with the DOJ's Office of Information and Privacy on August 21, 2006.  Due to a backlog of other pending appeals, plaintiff's administrative appeal has yet to be resolved.  In the meantime, on June 22,

2007, plaintiff filed this FOIA action, seeking to compel release of the withheld documents.[1]  On September 7, 2007, prior to answering the complaint, the DOJ released some previously withheld materials that were no longer expected to interfere with any ongoing enforcement proceedings.  At the present time, the DOJ continues to withhold approximately 350 pages of materials contained in its United States v. District of Columbia case file. Def's Mot. for Sum. Jgmt. at 6 [Dkt. # 12].

The parties have filed cross-motions for summary judgment.  The DOJ asserts that it has properly withheld these documents pursuant to FOIA Exemptions 5, 7(A), and 7(C). Plaintiff asserts that the DOJ has failed to satisfy the requirements for any of these exemptions.

**Analysis**

"[T]he agency bears the burden of justifying its decision to withhold requested information." King v. United States Dep't of Justice, 830 F.2d 210, 218 (D.C. Cir. 1987).  An agency "may meet this burden by filing affidavits describing the material withheld and the manner in which it falls within the exemption claimed."  Id.  The Department of Justice has filed the declaration of Nelson D. Hermilla, Chief of the FOI/PA Branch of the DOJ's Civil Rights Division, in support of its decision to

---

[1] Plaintiff does not challenge the DOJ's assertion that it has no documents responsive to the first portion of its request.

withhold correspondence between DOJ personnel and Father Flanagan's attorneys or representatives.  The Hermilla declaration explains that "[a]lthough the Civil Rights Division, at the present time, is withholding these documents pursuant to Exemption 7(A), these documents, if individually processed, would also be exempt in whole or in part under other provisions of the FOIA, including" Exemptions 5 and 7(C).  Declaration of Nelson Hermilla at ¶ 18 [Dkt. # 13, Ex. 2].

       Exemption 7(A)

To properly invoke Exception 7(A), the defendant must demonstrate, first, that the documents in question were "compiled for law enforcement purposes," and, second, that their release "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  For the first requirement to be met, the Hermilla declaration "must establish [both] 'a rational nexus between the investigation and one of the agency's law enforcement duties;' and [] 'a connection between an individual or incident and a possible . . . violation of federal law.'"  Ctr. for Nat'l Sec. Studies v. United States DOJ, 331 F.3d 918, 926 (D.C. Cir. 2003) (quoting Campbell v. United States DOJ, 164 F.3d 20, 32 (D.C. Cir. 1998)).  The Hermilla declaration clearly meets this standard, explaining that all of the withheld materials were "compiled in conjunction with an ongoing investigation and law enforcement proceeding involving

- 4 -

allegations of violations of the Fair Housing Act" against the District of Columbia.  <u>Hermilla Decl.</u> at ¶ 9.  The declaration goes on to describe all of the documents withheld as falling into one or more of three major categories: 1) "Documents Relating to Attorney Work Product and Case Development Matters;" 2) "Documents Relating to Evidentiary Matters;" and 3) "Documents Relating to Witnesses."  <u>Id.</u> at ¶ 12.  A number of more specific subcategories are also provided under each of these three headings.  The DOJ is under no obligation to provide the plaintiff with a document-by-document description, and can instead "satisf[y] its burden of proof under Exemption 7(A) by grouping documents in categories and offering generic reasons for withholding the documents in each category."  <u>Maydak v. United States DOJ</u>, 218 F.3d 760, 765 (D.C. Cir. 2000).

   Of course, the DOJ must still "demonstrate that . . . release of the information could reasonably be expected to cause some articulable harm to the proceeding."  <u>Voinche v. FBI</u>, 46 F. Supp. 2d 26, 31 (D.D.C. 1999).  The Declaration recites the following potential harms:

> 14. Disclosure of attorney work product and other documents related either to the government's initial inquiries or to the development of the government's case could prematurely reveal the direction, focus, and scope of other inquiries to the Plaintiff; the evidence developed to date and the reliance placed by the government on that evidence; the government's strategies; and the strengths and weakness of the government's case.  Prematurely

>revealing such information could provide
>potential defendants or third parties with undue
>insight into the development of the government's
>case, could enable the Plaintiff to devise
>strategies to counter enforcement efforts, and
>could impair the government's ability to present
>its best case.
>
>15. A premature disclosure of documents
>concerning the location or viability of
>potential evidence, as well as those documents
>that constitute the actual documentary and
>testimonial evidence obtained by the government,
>could provide potential defendants or third
>parties with insight into the government's case
>against them; could enable these individuals to
>alter, tailor or destroy evidence; or otherwise
>assist them in circumventing the law enforcement
>proceedings.
>
>16. Likewise, disclosing documents relating to
>witnesses in going inquiries and law enforcement
>proceedings could result in witness tampering or
>intimidation; could lead to alteration,
>tailoring or construction of testimony; and
>could discourage the continued cooperation of
>these witnesses as well as other knowledgeable
>individuals. . .

Hermilla Decl. at ¶¶ 14-16. "The principal purpose of Exemption 7(A) is to prevent disclosures which might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter evidence." Maydak, 218 F.3d at 761. As such, the Hermilla declaration's proffer substantiates the potential harm to the DOJ's efforts in United States v. District of Columbia that could be caused by release of some of the requested correspondence. However, the declaration

explicitly states that not all of the documents being withheld would interfere with United States v. District of Columbia or any other law enforcement proceeding: "There are records that pertain to matters within the Civil Rights Division that would not interfere with current, ongoing law enforcement proceedings but that nonetheless pertain to sensitive internal deliberations, express candid opinions and contain attorney work product." Hermilla Decl. at ¶ 19.  This concession presents a problem for the DOJ given the declaration's assertion that "the Civil Rights Division, at the present time, is withholding these documents pursuant to Exemption 7(A)."  Id. at ¶ 18.  Plainly, if release of a document would not interfere with current or anticipated enforcement proceedings, it is not properly withheld pursuant to Exemption 7(A).  See Judicial Watch, Inc. v. FDA, 449 F.3d 141, 147 (D.C. Cir. 2006) ("An agency may not claim exemptions too broadly, thereby sweeping unprotected information within the statute's reach.").  The DOJ's problem is not solved by the Hermilla declaration's further assertion that "these documents, if individually processed, would also be exempt in whole or in part under other provisions of the FOIA, including 5 U.S.C. 552(b)(5) and 5 U.S.C. (b)(7)(C)" (emphasis added).  This statement amounts to a conjecture that, if individually examined, documents not covered by 7(A) might be covered by another exemption.  Given this incomplete explanation, the DOJ's motion

for summary judgment can only be granted in part.  The DOJ has demonstrated that it properly withheld only those documents that, if released, would interfere with ongoing law enforcement proceedings.  As to the remaining documents, while the DOJ "need not justify its withholding on a document-by-document basis in court, the [DOJ] must itself review each document to determine the category in which it properly belongs" and which, if any, exemption applies.  Bevis v. Department of State, 801 F.2d 1386, 1389 (D.C. Cir. 1986).

**Conclusion**

The DOJ's motion for summary judgment [Dkt. # 12] is **granted** as to those documents properly withheld under Exemption 7(A), and **denied without prejudice** as to its renewal for any documents potentially covered by FOIA Exemptions 5 and 7©).  The DOJ must release to the plaintiff all documents not covered by Exemption 7(A) or conduct an individualized review of those documents and explain to the Court in a new affidavit why they should be deemed properly withheld.  The plaintiff's motion for summary judgment [Dkt. # 5] is **denied.**

A separate order accompanies this memorandum.


JAMES ROBERTSON
United States District Judge